Weldon, J.,
delivered the opinion of the court.
This is a suit based directly on the provisions of an act entitled “An act to increase the water supply of the city of Washington, and for other purposes,’7 passed July 17,1882, and found in the Statutes at Large, p. 16S. It is also insisted by counsel for the claimants, that upon the general principles of the law, applicable to the appropriation of private property for public use, there is a liability on the part of the defendants for the grievance complained of; and established by the findings.
The facts are briefly as follows: The claimants, before and at the time,it is alleged and shown, that the defendants did the acts complained of, were the owners in fee of lot Ho. 11 of the original lot Ho. 2 of the subdivision made by the heirs of John Little of parts of tracts called “ James Park ” and “ Mt. Pleasant,” as recorded in book “ Gov. Shepherd, 107 and 170.” On the 21st of August, 1883, the said lot, was used and occupied by the claimants, as a place of residence, having on it a valuable and enduring well of water. On said date, proceedings were begun by the publication of a notice, under the act aforesaid, to condemn a right of way, for a tunnel in the neighborhood, and near said premises. The defendants afterward constructed such tunnel, by blasting and digging, at a depth of 150 to 170 feet below the surface, in the immediate neighborhood of said property, and about 500 feet from said well.
In consequence of the construction of said tunnel, the said well became dry, and has so remained. The tunnel so constructed was in pursuance to the plan of improvement contemplated by the provisions of said statute, providing, as aforesaid, for the water supply to the city of Washington. Said well at the time of its destruction was 60 feet deep, and it does not appear that it was supplied by a distinct vein of water running into it. The damage to the said land, because of the failure of said well, was $3,100.
*91 The first section of said act, in one of its clauses provides as. follows:
“Any person or corporation having any estate or interest in any of the lands embraced in said survey and map, who shall for any reason, not having been tendered payment therefor as above provided, or who shall have declined to accept the amount tendered therefor, and any person who by reason of the taking of the said laud, or by the construction .of the works hereinafter directed to be constructed shall be directly injured in any property right, may, at any time within one year from the publication of notice by the Attorney-General as aboveprovided,fileapetitioninthe Court of Claims of tbe United States setting forth his right of title and the amount claimed by him as damages for the property taken or the injury sustained; and the said court shall hear and adjudicate such claims in the same manner that other claims against the United States are now b\ law directed to be heard and adjudicated therein: Provided, That the court shall make such special rules in respect to such cases as shall secure their hearing and adjudication with the least possible delay.
The land in which the well in controversy was situated, is not embraced in the survey and map, prepared under the provisions of said law.
It is insisted, that the claimants do not come within the terms-of the statute, for the reason the property affected is not embraced in the map and survey, and that they have no claim under and within the general jurisdiction of the court. Inasmuch, as these objections, go to the power to maintain the suit, it is proper that they should be disposed of, as preliminary to the'discussion of the rights of the parties, on the legal asjjects of the claim.
It will be observed that the phraseology of the law contemplates two distinct classes of claimants; first, those whose lands-are taken and appropriated by the construction and occupation of the tunnel, and those whose “ property right ” shall be “directly injured” by the construction of the works. And further, in providing for a jurisdiction in this court, the statute says:
“Any such person may at any time within one year from the publication of said notice, by the Attorney-General, as above provided, file a petition in the Court of Claims of the United. *92 States, setting forth his right of title and the amount claimed by him as damages for the property taken or the injury sustained.”
The terms of the statute, are sufficiently comprehensive, to 'embrace not only claims for damages, growing out of the physical taking or trespass to property, but also, all damages, which might result, from the construction and location of the ■tunnel, which could be considered, at common law consequential, and not immediate, unless limited by the term “directly injured.”
If the claimants, have a right to maintain this proceeding, it «must be under the peculiar provision of the law under which the work was prosecuted, and from which, it is alleged, the •damage or injury has originated.
The theory, upon which it is sought to recover, that there was a taking of property within the meaning of the Constitution of the United States, requiring just compensation to be made to the owner, can not be maintained on the facts of the •case. There was no talcing of property by the defendants, as against the claimants. Whatever was done, was an injury to a peculiar species of property, notin the possession of the claimants; and not their absolute property; but property in which they had an inchoate right, which in course of time might come into their possession, and subject to their dominion as owners of a usufruct.
The case of Russell (7 C. Cls. R., 227), and the Great Falls Manufacturing Company (112 U. S. R., 645), were both cases in which there had been a specific appropriation, and conversion of j>hysical property, belonging to the claimants, to the use and behoof of the Government. The case of Pumpilly v. Green Bay Company (13 Wall., 166), is the nearest approach to the claim, that every deprivation of a right of property, is a taking within the meaning of the Constitution; and yet that case falls, far short of establishing the doctrine in its fullest extent. The court says:
“And the constitutional provisions of the United States and ■of the several States which declare that private property shall not be taken for public use without just compensation were intended to establish this principle beyond legislative control.
“ It is not necessary that property should be absolutely taken in the narrowest sense of that word, to bring the case within the protection of this constitutional provision. There may be *93 such serious interruption to the common and necessary use of property as will be equivalent to a taking within the meaning, of the Constitution.
“ The backing of water so as to overflow the lands of an individual, or any other superinduced addition of water, earth, sand, or other material or artificial structure placed on land, if done under statutes authorizing it for the public benefit, is such a taking as by the constitutional provision demands compensation.
“This proposition is sustained by the decisions of the supreme court of Wisconsin, construing the provision of the constitution of that State on the subject, and by many adjudged cases in this country.
“The cases which hold that remote and consequential injury to private property by reason of authorized public improvements is not taking such property for public use have many of them gone to the utmost limit <jf that principle, and some beyond it, though the principle is a sound one, in its proper application to many injuries so originating.”
Hence we conclude, in the absence of the special statute, there is no law authorizing this court to hold, that the facts constituted a taking of private property, for public good, within the meaning of the Constitution of the United States, so as to authorize us to give judgment, for the value of the property affected.
The discussion is, therefore, limited to the effect of the statute, upon the rights of the parties. ' What rights did the statute give the claimants, and what liabilities has it placed on the defendants ? From what has already been said, it follows that, without the statute, no jurisdiction could be exercised by this court, to grant relief to claimants, however much they may have suffered, in consequence of the construction of the tunnel. In the absence of express provision to that effect, it is safe to conclude that Congress, in the passage of the law, did not intend that the United States should assume, towards the claimants, greater liability than Would attach to an individual, or ordinary corporation, who should, as adjoining owner, have done, in effect, what was done by the defendants. In giving this court jurisdiction, by special enactments, to try claims sounding in tort, it has never been held, that Congress intended to amplify or enlarge the responsibility of the Government, beyond the legal liability of persons, either natural or artificial. The statute simply provides a remedy against the United States, and brings them within the judicial jurisdiction of their own *94 Government, there to answer to the citizen, according to the measure that determines the responsibility of private parties.
If, therefore, an individual, as an adjoining owner, would not be liable for the grievances complained of, it must follow that there would be no liability attaching to the United States for doing the same thing, unless it is so expressed or implied in the statute. We have examined the many decisions of the different courts, upon the question of the liability of the owners of land, who, in the enjoyment of their estate, have affected the interests of adjoining owners, and do not find a uniformity of opinion upon that subject.
If the damage to the estate of the claimant, was the result of the ordinary use of the adjoining land by its owner, the question of liability might be less difficult, but the. building of a tunnel of immense magnitude, to supply a reservoir for the use of a large city, is an extraordinary use of the land occupied by the tunnel, and the question arises, does that use differentiate the case, so as to affect the law ? The case of Acton v. Blendel 12 Meeson & Welsby, 335, decided in 1843, in the Exchequer ■Chamber, is a leading case, upon someof the questions involved in this controversy. The plaintiff, sued because of the acts of on adjoining owner, complaining that the water supply which he had used for the use of his cotton mill had been by the sinking of a coal pit destroyed.
In a very lengthy opinion, the court concludes as follows:
“ We think this case, for the reasons given, is not to be governed by law which applies to rivers and flowing streams, but that it rather falls within che principle which gives the owner of the soil all that lies beneath the surface; that the land immediately below is his property whether it is solid rock or porous ground, or venous earth or part soil, part water, that the person who owns the soil may dig therein, and apply all that is there found to his own purposes at his free will and pleasure, and that if in the exercise of such right he intercepts and drains off the water collected from the under-ground springs in his neighbor’s well, this inconvenience to his neighbor falls within the description of damnum absque injuria, which can not become the ground of action.”
In the case of Wheatly v. Baugh, 25 Penn. State Reports, p. 528, the court says:
“ Where a subterranean flow of water has become so well defined as to constitute a regular and constant stream, the owner of the land above through which it flows may not divert *95 or destroy it to the injury of the person below, on whose land it issues in the form of a spring.
“ But where the spring depends for its supply upon percola-tions through the land of the owner above, and in the use of the land for mining or other lawful purposes, the spring is destroyed, such owner is not liable for the damages thus done unless the injury was occasioned by malice or negligence.
“ The prior use of the spring for the purposes of a tannery-conferred no right of servitude over or through the laud of the adjacent proprietor.
“ Eor would the enjoyment of the spring for twenty-one year's raise any presumption of a grant; for no presumption would arise against the owner uutil it was shown that the exercise of the privilege interfered with his rights in such manner as to entitle him to legal redress.”
In the case of Dickinson and others v. The Grand Junction Canal Company, 7 Exch., 232, it is held, first, that at common law, the company was liable to an action for obstructing the water which actually had formed part of the stream of the river by sinking the well. Secondly, that an action would lie against it at common law, for the obstruction of water which did not form part of the river, but was prevented in so doing, in its natural course, by the excavation of the well, whether the water was part of an under-ground water-course or percolated through the strata. Of this case, it is said by a learned writer on the subject of water-courses : “ Though generally regarded as erroneous, and therefore not to be followed,; so far as it undertakes to decide concerning waters percolating through the strata of the earth? has been generally approved in subsequent cases in its views of the law respecting water flowing in defined channels beneath the surface.” Angelí on Water-courses, seventh edition, 150.
The same court in Broadbent v. Ramsbotham, 11 Exch., 602, said:
“Eo doubt all the water falling from heaven and shed upon the surface of a hill, at the foot of which a brook runs, must by the natural force of gravity, find its way to the bottom and so into the brook ; but this does not prevent the owner of the land on which this water falls from dealing with it as he may please and appropriating it. He can not, it is true, do so if the water has arrived ataúd is flowing in some natural channel already formed. But he has a perfect right to appropriate it before it arrives at such channel. ”
*96 The case of Benjamin v. The Boston and Maine Railroad Company (3 Cushing, 107), cited in the argument by the counsel for the claimant, is a case in which the liability of the defendant, turned upon the construction of a statute; and in the decision of the common law question the court said :
“ And so in regard to the well. Theclaim for damages on this ground does not depend on the relative rights of owners of land, each of whom has a right to make use of his own estate, and sinking a well upon it is such proper use; and if the water, by its natural current, flows from one to the other, and a loss ensues, it is damnum absque injuria. But the respondents did not own-land ; they only acquired a special right to and usufruct in it upon the condition of paying all damages which might be thereby occasioned to others. ”
In this case, the United States acquired the absolute title to the land condemned, and appropriated for the construction of the tunnel, as we must infer, because of the requirements of the statute, and in that particular differs from the defendant in the case justcited. The statute in that case provided that, “ Every railroad corporation shall be liable to pay all damages that, shall be occasioned by laying out, and making and maintaining their road, or by taking any lands or materials, as provided in the preceding section. ” It will be seen that the liability of the railroad company, turned on the construction, of the local statute of Massachusetts, in relation to railroad companies. The opinion is by Chief Justice Shaw, and the fact that he does not refer to the particular use to which the adjoining close was-subjected, is an indication that the lawful use of the premises without a malicious purpose to injure, will protect the owner from all claim for damages.
The case of Trowbridge v. Inhabitants of Brookline (144, Mass. 139), turns also upon the construction of a statute.
When the United States, acquired title to the land, embraced within the survey and map, they succeeded to whatever rights the former owner had in the premises; and if such owner would not be liable, then, as we have before said, Congress not intending to enlarge the liability of the Government, beyond that which measures the responsibilities of individuals, the defendants are not liable in this proceeding. In the Haldemann v. Bruckhart (45, Penn. State Reports,p. 514), the distinguished jurist, Mr. Justice Strong, discusses the question with’ marked ability, and that decision follows the line indicated by Justice *97 Lewis in the case of Wheatly v. Baugh (25 Penn. State Reports, 528).
The court says:
“Throwing out of view for the present, such exceptional cases, there is a well-marked distinction between a flowage of water in surface and subsurface channels. A proprietor of land may, in the proper use of his land for mining, quarrying, building, draining, or any other useful purpose, cut off or divert subterraneous water flowing through it, to the land of his neighbor without any responsibility to that neighbor. * * *
“ We are not, however, to be understood as intimating that any owner may maliciously or negligently divert even an unknown subterranean stream to the damage of a lower proprietor. But in the enjoyment of his land he may cut drains, or mine, or quarry, though in so doing he interfere with the flowage of water in hiriden, unknown, underground channels.”
If, therefore, an injury is caused by the lawful use of land by its owner or occupant® which results in disturbing the flowage of water, caused by percolation, and thereby a well on an adjoining lot is deprived of a supply of water, it is an injury for which there is no liability, and the doctrine of damnum absque injuria applies.
The remaining inquiry is, has the statute changed the law, so that a new liability has been created. Did Congress intend to establish for the Government a higher grade of liability, than that recognized for individuals at common law? The common law, crude and even barbarous, in the commencement, in some of its provisions, has endured, with its accumulating improvements and modifications, for ages; and in its fundamental theories, as they now exist in this country, it must be regarded, in the absence of statutory provisions, as affording the best system of municipal law, regulating the duties, and determining the rights of parties litigant.
For persons whose lands do not fall, within the boundary of the map and survey, Congress have provided a remedy.
The construction finally given to the statute will be found in the decision of the court on a motion for a rehearing. See post.
Nott, J., was prevented by illness from sitting in this case and took no part in the decision.