UNITED STATES v. ALEXANDER.

APPEAL FROM THE COURT OF CLAIMS.

No. 552.  Submitted January 9, 1893. — Decided March 6, 1893.

The owner of a well, on land near to but not on the line of the Washington
    aqueduct, which was destroyed in the construction of that work, may
    recover its value from the United States in the Court of Claims under
    the provisions of the act of July 15, 1882, 22 Stat. 168, c. 294.

*Acton* v. *Blundell*, 12 M. & W. 324, distinguished from this case.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Cotton* for appellants.

*Mr. Job Barnard* and *Mr. George A. King* for appellees.

MR. JUSTICE SHIRAS delivered the opinion of the court.

The facts of this case, as found by the Court of Claims, (25
Ct. Cl. 87, 329,) are as follows :

Since February 28, 1880, the appellees have been the owners
of a tract of land in the District of Columbia, known as lot 11
of original lot 2 of the subdivision made by the heirs of John
Little of parts of tracts called " James Parks " and " Mt. Pleas-
ant," and containing about eight acres.  On the 21st day of
August, 1883, the said ground was improved by a dwelling-
house and other buildings and a valuable well of water, neces-
sary to supply water for family use and other purposes, the
said property being occupied by the owners as a dwelling.

On that day proceedings were begun by the publication
of a notice, under the act of Congress of July 15, 1882, to
increase the water supply of the city of Washington, (22 Stat.
168, c. 294,) to condemn a right of way for a tunnel in the
neighborhood of this ground, and the government afterwards
constructed such tunnel by blasting and digging at a depth of
150 to 170 feet below the surface in the immediate neighbor-

hood of said property, and about 500 feet distant from the said well.

The well had been used for many years before the construction of the tunnel. There was no direct evidence as to the effect of the tunnel on the well, but during the process of construction and blasting, about one hundred and fifty yards from the premises, the well became dry and it has so remained. It does not appear that there was any other cause affecting the well. By reason of the construction of the tunnel, as the Court of Claims finds, the well was drained and destroyed, to the damage of the owners in the sum of fifteen hundred dollars, no portion of which has been paid or tendered by the government.

This well, at the time of its destruction, was sixty feet deep, and it does not appear that it was supplied by a distinct vein of water running into it. The tunnel is impervious to water, and water from the outside does not soak into it. The land on which the well was located is not embraced in the map and survey of lands to be taken under the act of Congress.

Upon these facts the court below adjudged that the plaintiffs, the owners of said land, were entitled to recover the sum of fifteen hundred dollars, and judgment was entered for that amount.

Whether, under the constitutional provisions of the United States and of the several States, which declare that private property shall not be taken for public use without just compensation, it is necessary that property should be absolutely taken in the narrowest sense of that word to bring the case within the protection of the provision, is a question that has often arisen, and upon which there has not been entire uniformity of decision.

"There may be," said this court, in the case of *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166, (syllabus,) "such serious interruption to the common and necessary use of property as will be equivalent to a taking within the meaning of the Constitution." "The cases which hold that remote and consequential injury to private property by reason of authorized public improvements is not taking such property for public use have

many of them gone to the utmost limit of that principle, and some beyond it, though the principle is a sound one in its proper application to many injuries so originating."

We do not find it necessary to consider on which side of the line thus suggested the present case would fall, for we agree with the court below in thinking that, in the act of Congress, under which this public work was done, are found provisions giving an express remedy for property damaged though not actually taken. The first section of the act is in the following terms:

"That the Secretary of War shall cause to be made a survey and map of the land necessary to extend the Washington Aqueduct from its present eastern terminus to the high ground north of Washington near Sixth Street extended, and of the land necessary for a reservoir at that point, the capacity of which shall not be less than three hundred million gallons; and a like survey and map of the land necessary for a dam across the Potomac River at the Great Falls, including the land now occupied by the dam, and the land required for the extension of said dam across Conn's Island to and upon the Virginia shore; and when surveys and maps shall have been made the Secretary of War and the Attorney General of the United States shall proceed to acquire to and for the United States the outstanding title, if any, to said land and water rights, and to the land on which the gate-house at Great Falls stands by condemnation.

"And in obtaining title to the right of way for the extension of said aqueduct, the Secretary of War and Attorney General may, in their discretion, secure title to a strip suitable for an avenue over such part of said aqueduct extended as they think proper: *Provided*, That at least one-half in value of such right of way shall be donated or dedicated by the owners to that public use: *And provided further*, That if it shall be necessary to resort to condemnation, the proceeding shall be as follows:

"When the map and survey are completed, the Attorney General shall proceed to ascertain the owners or claimants of the premises embraced in the survey, and shall cause to

be published, for the space of thirty days, in one or more of
the daily newspapers published in the District of Columbia,
a description of the entire tract or tracts of land embraced
in the survey, with a notice that the same has been taken
for the uses mentioned in this act, and notifying all claimants
to any portion of said premises to file, within its period of
publication, in the Department of Justice, a description of
the tract or parcel claimed, and a statement of its value as
estimated by the claimant. On application of the Attorney
General, the Chief Justice of the Supreme Court of the District
of Columbia shall appoint three persons, not in the employ
of the government or related to the claimants, to act as ap-
praisers, whose duty it shall be, upon receiving from the
Attorney General a description of any tract or parcel the
ownership of which is claimed separately, to fairly and justly
value the same and report such valuation to the Attorney
General, who thereupon shall, upon being satisfied as to the
title to the same, cause to be offered to the owner or owners
the amount fixed by the appraisers as the value thereof, and
if the offer be accepted, then upon the execution of a deed to
the United States in form satisfactory to the Attorney Gen-
eral, the Secretary of War shall pay the amount to such owner
or owners from the appropriation made therefor in this act.

"In making the valuation the appraisers shall only consider
the present value of the land without reference to its value for
the uses for which it is taken under the provisions of this
act.

"The appraisers shall each receive for their services five
dollars for each day's actual service in making the said
appraisements.

"Any person or corporation having any estate or interest
in any of the lands embraced in said survey and map who
shall for any reason not have been tendered payment therefor
as above provided, or who shall have declined to accept the
amount tendered therefor, and any person who, by reason of
the taking of said land, or by the construction of the works
hereinafter directed to be constructed, shall be directly injured
in any property right, may, at any time within one year from

the publication of notice by the Attorney General as above
provided, file a petition in the Court of Claims of the United
States setting forth his right or title and the amount claimed
by him as damages for the property taken or injury sustained;
and the said court shall hear and adjudicate such claims in
the same manner as other claims against the United States
are now by law directed to be heard and adjudicated therein :
*Provided*, That the court shall make such special rules in
respect to such cases as shall secure their hearing and adjudi-
cation with the least possible delay.

"Judgments in favor of such claimants shall be paid as
other judgments of said court are now directed to be paid ;
and any claimant to whom a tender shall have been made as
hereinbefore authorized, and who shall have declined to accept
the same, shall, unless he recover an amount greater than
that so tendered, be taxed with the entire cost of the proceed-
ing. All claims for value or damages on account of owner-
ship of any interest in said premises, or on account of injury
to a property right by the construction of said works, shall,
unless a petition for the recovery thereof be filed within one
year from the date of the first publication of notice by the
Attorney General as above directed, be forever barred : *Pro-
vided*, That owners or claimants laboring under any of the
disabilities defined in the statute of limitations of the District
of Columbia may file a petition at any time within one year
from the removal of the disability.

"Upon the publication of the notice as above directed,
the Secretary of War may take possession of the premises
embraced in the survey and map, and proceed with the con-
structions herein authorized ; and upon payment being made
therefor, or, without payment, upon the expiration of the
times above limited without the filing of a petition, an abso-
lute title to the premises shall vest in the United States."

By a subsequent act approved February 26, 1885, 23 Stat.
332, c. 163, the time for filing petitions in the Court of Claims
was extended for one year from the passage of the act — that
is, to February 26, 1886.

It is contended, on behalf of the United States, that the

ιegislature intended to restrict the right to sue exclusively tυ the parties holding land within the limits of the survey, and that hence the Court of Claims erred in recognizing the claim for damages to lands not embraced in the survey. We are unable to adopt this view of the meaning of the statute.

On the contrary, we think the plain meaning and intent of the legislature were to provide for the case of those whose lands or property rights were directly injured by the construction of the work proposed to be done, as well as for the case of those injured by the taking of their lands. This seems to us so clear as to require no elucidation. This very point, arising under the act in question, was decided by this court in *Great Falls Manufacturing Co.* v. *The Attorney General*, 124 U. S. 581, 596, where it was said : "While Congress supposed that a survey and map could be made with such accuracy as to embrace all the land necessary, under any circumstances, for the purposes indicated in the act of 1882, and while provision is made whereby the owners of lands, covered by such survey and map, can obtain just compensation, the act also opens the Court of Claims to every person who, by the construction of the works in question, has been injured in any property right, provided that, within a given time, such person file his petition in that court, setting forth his right or title and the amount claimed by him as damages."

Again, it is claimed for the government that, even if the statute be read to apply to the case of property not embraced in the survey, yet the case of a destruction of a well is not a " direct injury " within the contemplation of the statute.

It is difficult to see the force of this contention. An adequate supply of water for household and other purposes has always been regarded as an essential incident to a dwelling-house. A never-failing well or spring of water adds greatly to the market value as well as to the comfort of such property. How important and indispensable is a supply of water is seen in the very work in question, whose object is, as declared by the statute, to increase the water supply of the city of Washington.

It cannot be denied that a well of water is property recog-

nized by the law, any injury to which is redressible by law. To pollute or foul the water of a well is an actionable injury. *Ball* v. *Nye*, 99 Mass. 582.

We see no reason why we should disregard the finding of the court below, that " by reason of the construction of said tunnel the said well of water was drained and destroyed," and we regard such a finding as proof that the owners of the property suffered a direct injury within the meaning of the remedial provisions of the statute.

We regard the remedial features of this statute as coming within the suggestion of Chief Justice Gibson, in the noted case of *O'Connor* v. *Pittsburgh*, 18 Penn. St. 187, 190 : " The constitutional provision for the case of private property *taken* for public use extends not to the case of property *injured* or *destroyed;* but it follows not that the omission may not be supplied by ordinary legislation."

Finally, an argument in favor of the government is based upon the finding of the court below, that it does not appear that the well was supplied " by a distinct vein of water running into it;" and the leading case of *Acton* v. *Blundell*, 12 M. & W. 324, and cognate cases are cited.

The doctrine of those cases substantially is, that the owner of land may dig therein and apply all that is there found to his own purposes at his free will and pleasure; and that if, in the exercise of such right, he intercepts or drains off the water collected from underground springs in his neighbor's well, this inconvenience to his neighbor falls within the description of *damnum absque injuria*, which cannot become the ground of an action.

We recognize this as sound doctrine in the ordinary case of a question between adjoining owners of land. But in a case like the present, where the injury complained of is inflicted by the construction of a public work under authority of a statute, over land upon which the public authority has acquired a right of way only, and where the statute itself provides a remedy for such injury, the law has been held to be otherwise in cases whose reasoning demands our assent.

A Massachusetts statute provided that " every railroad cor-

poration shall be liable to pay all damages that shall be occasioned by laying out and making and maintaining their road, or by taking any land or materials." Construing that statute, in the case of *Parker* v. *Boston & Maine Railroad*, 3 Cush. 107, 114, the Supreme Judicial Court said:

"And so in regard to the well. The claim for damages on this ground does not depend on the relative rights of owners of land, each of whom has a right to make a proper use of his own estate, and sinking a well upon it is such proper use; and if the water, by its natural current, flows from one to the other, and a loss ensues, it is *damnum absque injuria.* But the respondents did not own land; they only acquired a special right to and usufruct in it, upon the condition of paying all damages which might be thereby occasioned to others."

In the quite recent case of *Trowbridge* v. *Brookline*, 144 Mass. 139, 141, another statute was under consideration by the same court, similar in every respect to the act of Congress now under consideration. The case of *Parker* v. *Boston & Maine Railroad* was fully recognized and its authority followed. We quote as follows from the opinion:

"The question presented is whether a town which lawfully takes land and constructs a common sewer therein, whereby a well upon land not taken, and not adjoining land taken, is made dry, the well being fed by water percolating through the soil, may be liable to pay damages therefor to the owner of the land in which the well is situated.

"The respondent is liable for 'damages occasioned by the laying, making or maintaining' the sewer. Pub. Stats. c. 50, § 3. The provision in the railroad act is similar: 'Damages occasioned by laying out, making, and maintaining its road.' Pub. Stats. c. 112, § 95. The provision in regard to public ways is: 'If damage is sustained by any persons in their property by the laying out,' etc. Pub. Stats. c. 49, §§ 14, 68. Section 16, which also applies to sewers, provides that, in estimating the damage, 'regard shall be had to all the damages done to the party, whether by taking his property or injuring it in any manner.' Under these provisions damages can be recovered for injuring land not taken and

not abutting upon land taken. *Dodge* v. *County Commissioners*, 3 Met. 380; *Parker* v. *Boston & Maine Railroad*, 3 Cush. 107; *Marsden* v. *Cambridge*, 114 Mass. 490.

"The respondent contends that it had the right of an owner of the land taken to make excavations in it, and thereby drain its neighbor's well; that its act without the authority and protection of the statute, was lawful, and invaded no right of the petitioner, and gave her no right of action; and that, in accordance with the decisions in England, the statute should be construed to intend only damages which, but for the protection of the statute, could be recovered by action. See *New River Co.* v. *Johnson*, 2 El. & El. 435; *Metropolitan Board of Works* v. *McCarthy*, L. R. 7 H. L. 243. But the respondent does not stand, in this respect, in the position of a purchaser of the land, taking the rights of its grantor. It is not the absolute owner of the land, but it took and holds the right to occupy the land for certain purposes, and to do upon it certain acts authorized by the statute. In exercising its rights, the town acts, not under the title of the owner, but by virtue of the authority given by the statute, and under the obligation imposed by the statute to pay all damages occasioned thereby. The petitioner had a right to collect and keep the water in her well; and depriving her of it, so as to injure her land, was a damage to her. It is no answer that other landowners had the same right in respect to their lands, and that, if the petitioner's damages had been in consequence of the exercise of those rights in his land by a landowner, she could not have recovered damages from him. The respondent's rights in the land, and its authority to do the act which caused the damage, are given by the same statute which gives a remedy to the petitioner to recover the damages.

"The precise question presented here was decided, in regard to a railroad, in *Parker* v. *Boston & Maine Railroad*, *ubi supra*. In that case, damages were alleged to have been occasioned, in the construction of a railroad, to land not within or adjoining the location of the road, by changing the grade of a highway and by draining a well. It is not suggested

that either would be a cause of action at common law. Chief Justice Shaw says that the main question in the case is 'whether a party having land with buildings thereon, lying near the track of a railroad, but not crossed by it, can recover compensation for incidental damages caused to his land, by the construction of the railroad and the structures incident to and connected with it.' After discussing the question, he says : 'We are of opinion, therefore, that a party who sustains an actual and real damage, capable of being pointed out, described and appreciated, may sue a complaint for compensation for such damage.' In regard to the well he says : 'The claim for damages on this ground does not depend on the relative rights of owners of land, each of whom has a right to make a proper use of his own estate, and sinking a well upon it is such proper use ; and if the water, by its natural current, flows from one to the other, and a loss ensues, it is *damnum absque injuria.* But the respondents did not own land ; they only acquired a special right to and usufruct in it, upon the condition of paying all damages which might be thereby occasioned to others.' "

In *Wheatley* v. *Baugh,* 25 Penn. St. 528, 533, the case of *Parker* v. *Boston & Maine Railroad* is cited with approval.

We also regard our own case of *Great Falls Manufacturing Company* v. *Attorney General,* above cited, as, in effect, construing the statute as applicable to a claim like the present one.

Upon the whole, we are of opinion that the judgment of the Court of Claims is sustainable on principle and authority, and it is accordingly

*Affirmed.*