OLIVER WHEELOCK *vs.* ELMER E. JACOBS.

October Term, 1897.

Present: TAFT, ROWELL, TYLER, MUNSON, START and THOMPSON, JJ.

*Percolating Water — Prescription — Injunction — Conveyance of Spring Carries What Rights in Grantor's Adjacent Land.*

Water coming from rain and melting snows, percolating the soil of a hillside to the bed rock, down which it wanders in depressions and passages of unknown location, size and direction, is to be considered percolating water, clearly distinguishable from water flowing in a well defined underground channel; and one who digs to the bed rock and there gathers and draws off such water cannot be restrained by injunction, although by so doing he diminishes the supply in his neighbor's spring.

There are no correlative rights between owners of adjoining land in respect to percolating water.

The doctrine of prescription has no application to percolating water.

A deed of "a spring of water and the pipe that conveys the water from said spring," does not carry water percolating the adjacent soil of the grantor, before it reaches the spring; consequently the grantor cannot be enjoined from digging another spring upon his own land although its effect may be, by interrupting such percolation, to diminish the supply in the one conveyed.

BILL IN CHANCERY. Heard on pleadings and master's report at the September Term, 1896, Washington County, before *Ross*, Chancellor. The bill was dismissed. The orator appealed.

*T. J. Deavitt* and *J. P. Lamson* for the orator.

*J. H. Senter* and *W. A. Lord* for the defendant.

ROWELL, J. On January 1, 1872, Eben Scribner, by his warranty deed of that date, conveyed to the orator a dwelling-house, outbuildings, and a spring then supplying said buildings with water. The spring was on other land of the grantor's, and the words conveying it are: "Also a spring of water and the pipe that conveys the water from said spring to said buildings." This is not a spring where water issues from the ground by natural forces, but was formed by excavating three or four feet through the soil to the bed rock, which dips towards the Winooski at quite a sharp angle.

At the bottom of this excavation there is a fissure in the rock through which the water comes into the excavation from the upper side. This fissure was closed on the lower side, and the excavation bricked up, to make a receptacle for the water. In wet times there is usually plenty of water, but in dry times it is scant. The snow and rain that fall on the land above supply the spring with water, which percolates the soil to the bedrock, then follows the rock to the river, "passing over the rock in its lowest places or through some fissure or hole therein," as the master finds.

The orator's grantor subsequently conveyed to J. G. Scribner the land around the spring, except what he had theretofore conveyed by deed, and J. G. Scribner conveyed to the defendant a small piece of it just below the spring, on which the latter, without malice, but for the purpose of obtaining needed water for his own house, dug down to the bedrock, the top of which was "rotten and full of joints," which, on being removed with pick and shovel to the depth

of three and a half or four feet below the surface, revealed a fissure or hole in the rock six or eight inches in diameter, through which a stream of water was running large enough to fill a five-eighths pipe, the direction of which, if continued in the same course, would carry it some feet south of the orator's spring. The defendant stopped this hole at the lower end, except putting in a half-inch pipe near the bottom to let the water through, and this formed a small hollow in the rock, which filled with water, and from which the defendant took water to his house. Some portion of the water thus taken by the defendant, theretofore usually found its way into the orator's spring through some subterranean passage or passages, and was one source of its supply; and it is to restrain this diversion of water that the bill was brought.

This is not a case of water flowing in a well-defined channel under ground, but of water coming from rain and melting snows, percolating in varying quantities the soil of an extensive hillside to the bedrock, down which it wanders in divers depressions and passages of unknown location, size, and direction, until it finally reaches the river.

Now there are no correlative rights between owners of adjoining land in respect of percolating water, which is regarded as a part of the earth itself, as much as the soil and the stones, with the same absolute right of use and appropriation by the owner of the land in which it is. *Chatfield* v. *Wilson*, 28 Vt. 49; *Chasemore* v. *Richards*, 7 H. L. C. 349: 1 Eng. Rul. Cas. 729. Hence, on this score, the orator's loss is without legal injury, and affords no ground for sustaining the bill.

Nor has the orator acquired a prescriptive right to this water, for the doctrine of prescription is not applicable to percolating water. Angell on Watercourses, 6th ed. § 114 p; *Lybe's Appeal*, 106 Pa. St. 626: 51 Am. Rep. 542; *Chasemore* v. *Richards*, above cited; *Roath* v. *Driscoll*, 20 Conn. 533; 52 Am. Dec. 352.

But the orator says that his deed conveys the water to him by implication before it reaches the spring, because the maxim is that when you grant a thing, you are presumed also to grant to the extent of your power that without which the thing granted cannot be enjoyed, and that, therefore, the acts complained of are in derogation of the grant; and he relies on *Coolidge* v. *Hager*, 43 Vt. 9, as fully sustaining his claim.    That was a conveyance of a house and lot without mention of a spring owned by the grantor on the land of another, from which water was then running to said house through an aqueduct that was partly in the land conveyed, partly in other adjoining land of the grantor's, and partly in the land of the third person.  No question was made nor could be but that the grant carried all of the aqueduct that was in the land conveyed, and the court held, on the principle of the maxim invoked, that the grant of the house and the land and of that part of the aqueduct in the land, carried with them the water as it was then running, with the right to the spring and the aqueduct sufficient for its continuance, as an appurtenance of the house and the land.

But that case is not like this.  There the question was whether the spring was conveyed at all or not, while here it is, not whether the spring was conveyed, but whether the grant of it conveyed by implication, percolating water before it reached the spring, and so the question is as to the extent of the grant, as it was in *Minard* v. *Currier*, 67 Vt. 489, which is much in point.  That was a conveyance in fee of certain springs or wells fed by percolating water, with a further conveyance of all the grantor's right to the water that would naturally flow into them.  It was said that a grant of the land containing the wells would not have deprived the grantor nor his grantees of the right to dig upon the remaining land to the injury of the wells, but that a right to percolating water greater than would be acquired by a deed of the land could be created by apt and sufficient

words, and if the language of the deed clearly imports such right, the law will recognize it, and it was held that the further conveyance did import such right in that case, and conveyed the water that the wells would receive when nothing was done to intercept its passage. *Whitehead* v. *Parks*, 2 H. & N. 870, is to the same effect. Now there is no difference between granting land containing a spring, and granting a spring without more; and in each case, although the grantee takes the fee, he must stand on his common-law right as to percolating water. The orator's deed gives him the spring and the water therein and flowing therefrom, but it gives him no right to water before it reaches the spring, and consequently no right to prevent his grantor nor those claiming under him from diverting it from the spring.

*Braun* v. *Marfell*, English Court of Appeals, 41 L. T. Rep. 455—s. c. 20 Am. Law Reg. N. s. 93, is a leading case on this subject, and a stronger one for the plaintiff therein than this is for the orator. There the defendant sold a spring to the plaintiff, and the sole right to the water therein and obtainable therefrom, with the right of conveying the same through a pipe in the defendant's land to the plaintiff's dwelling-house, with the right of entry for repairs and other proper purposes, with a declaration that the plaintiff, his heirs and assigns, should be the absolute owner of the spring, and a covenant of quiet enjoyment. The defendant subsequently sold some of his land near the spring to a railroad company, which made a tunnel through it that destroyed the spring, whereupon the plaintiff sued the defendant for a breach of his contract; and it was held that the defendant had conveyed the water only after it reached the spring, and that draining the water before it reached the spring was no breach. Lord Coleridge said in the course of his opinion, that in a case on the Western Circuit, the name of which he did not remember, it was held that in the conveyance of a spring with the water flowing from it, the

spring-head, with the definite stream of water flowing from it, was meant, and that interference with the water before it reached the head, or before it began to run in a definite channel, was not actionable.

In *Bliss* v. *Greeley*, 45 N. Y. 671: 6 Am. Rep. 157, the owner of a farm granted to the plaintiff, with a covenant of warranty, the right to dig and stone up a spring thereon, and to lay a pipe therefrom to plaintiff's house. Held, that the entire farm was not thereby made servient to the grant, and that the grantor's assignee might lawfully dig a spring near plaintiff's spring, though it was thereby rendered useless.

*Lybe's Appeal*, above cited, was, like this, a bill for an injunction. There the grantor of land reserved the right to conduct water from a spring thereon to his adjoining land, on which a well was subsequently dug, whereby the subterranean supply of the spring was cut off; and an injunction was denied.

In *Chesley* v. *King*, 74 Me. 164: 43 Am. Rep. 569, the grantor of land reserved the privilege of taking water from a spring thereon to his house and barn and pasture. The court said that while the grantor's rights in the spring were completely subject to the grantee's right to consult his own convenience and advantage in the digging of a well in the land conveyed for better supplying it with water, yet if he dug the well for the sole and malicious purpose of cutting off the sources of the spring and injuring the plaintiff, he would be liable. By our law it is immaterial with what motive a man does an act lawful in itself.

*Decree affirmed and cause remanded.*

*Taft*, J., dissents.