Mr. Justice Van Obsdel
delivered the opinion of the Court:
At the conclusion of the case, counsel for defendant offered the following instruction, which the court refused to submit to the jury: “The jury is instructed that if they find that the injury, if any, to plaintiff’s premises, was due to the withdrawal of subterranean waters from beneath the surface of plaintiff’s land, caused by the excavation of the tunnels, plaintiff cannot recover, and their verdict must be for the defendant.” This was error. Clearly, if the damage was caused by the withdrawal of subterranean waters in consequence of the construction of the tunnel, it is damnum absque injuria, and there can be no recovery.
The common-law right of a landowner, or those holding under him, if essential to the full enjoyment of his estate, to drain *515 percolating subterranean water from beneath the land of his neighbor, is too well settled to admit of division of opinion. The exception is found in the familiar rule that where one grants land to another for a particular purpose, if the withdrawal of the water by the grantor on adjacent land would destroy the use for which the grantee purchased, the grantor would be estopped from doing an act in derogation of his own grant. But the exception has no application to this case. When plaintiff purchased the lot she was charged with notice of the uses to which the adjacent land might be subjected, both by public and private structures, such as are common in great cities.
The controlling case on this subject, and one generally cited in support of the common-law rule, is Popplewell v. Hodkinson, L. R. 4 Exch. 248. Cockburn, Ch. J., announcing the opinion of the court, said: “Although there is no doubt that a man has no right to withdraw from his neighbor the support of adjacent soil, there is nothing at common law to prevent his draining that soil, if, for any reason, it becomes necessary or convenient for him to do so. It may be, indeed, that where one grants lands to another for some special purpose,—for building purposes, for example,—then, since, according to the old maxim, a man cannot derogate from his own grant, the grantor could not do anything whatever with his own land which might have the effect of rendering the land granted less fit for the special purpose in question than it otherwise might have been. * * * Indeed, when we remember that the land was close to an important and populous town, and that there was therefore every probability of its being built upon, the plaintiff, we.may infer, must have had strong reasons for supposing that it would he so built upon, and, consequently, would be effectually drained, if the nature of the erections proposed to be put upon it should render that operation necessary. It so happens that a church has been built there, and it was essential, the buildings being large and heavy, to drain the land deeply to get a secure foundation. Now, the plaintiff cannot complain of this, for he had no right to suppose that the adjacent land would be used for the erection of such cottages as he had himself erected, or of other buildings requiring *516 equally little support. Seeing, then, that there was no implied condition that the grantor in this case would not drain, there was no obligation on him or those who claim through him not to drain, to such an extent as the nature of the building to be erected rendered safe and desirable.”
The reason for the rule is that percolating subterranean water is a wandering thing, which, like the air, is not subject to any fixed rules of law. The existence, origin, course, and movement of such waters, and the causes which govern and direct their movements, are so involved in mystery, secrecy, and uncertainty as to render any attempt to establish or administer any set of legal rules with respect to them practically impossible.
One of the best considered cases which has come to our notice is Chatfield v. Wilson, 28 Vt. 49. It is there held that “there are no correlative rights existing between the proprietors of adjoining lands, in reference to the use of the water in the earth or percolating under its surface. Such water is to be regarded as part of the land itself, to be enjoyed absolutely by the proprietor within whose territory it is; and to it the law governing the use of running streams is inapplicable.” This ease, based upon the strongest reason, goes to the full extent in holding that the act of detaining or diverting subsurface percolating waters from an adjoining proprietor gives no right of action.
It is not different that the drainage here was caused by the construction of a railroad in a public street. The use of the street for this purpose was proper. The railroad company acquired its right of way from the government, in which was the fee and control of the street. We can see no distinction between the right of the railway company through its agent, the defendant, to intercept the percolating waters finding their way to the tunnel, and that of the government itself, had it caused similar ■drainage by the construction of sewerage or other public work under the street. In New Albany & S. R. Co. v. Peterson, 14 Ind. 112, 77 Am. Dec. 60, where the railroad, in excavating on its right of way, drained a well on neighboring land, not touched by the right of-way, it was said: “The railroad company, for the purpose of constructing their road, had the same right to exea *517 vate, within the limits of their right of way, that a private individual would have to dig upon his land for any purpose; and we know of no statute or principle which would hold them liable for an injury such as that complained of, beyond the liability of a natural person for a like injury.”
The case of United States v. Alexander, 148 U. S. 186, 37 L. ed. 415, 13 Sup. Ct. Rep. 529, relied upon by counsel for plaintiff, is not in point. There the government, under the authority of an act of Congress, condemned a right of way for a tunnel through which to convey water to supply the city of Washington. In its construction, appellee’s well, situated a distance of 500 feet from the tunnel, and not within the right of way condemned, was destroyed. The act of Congress authorizing the condemnation of the right of way provided for the adjustment of “all claims for value or damages on account of ownership of any interest in said premises, or on account of injury to a property right by the construction of said works ” The case turned upon the statutory right of action granted. The court held that water collected in appellee’s well constituted a property right, and that, under the provisions of the statute, the government was liable for damages incurred by reason of its destruction. The court, referring to the common-law rule as laid down in Acton v. Blundell, 12 Mees. & W. 324, 13 L. I. Exch. N. S. 289, 15 Mor. Min. Rep. 168, and similar cases said: “The doctrine of those cases substantially is^ that the owner of land may dig therein, and apply all that is there found to his own purposes, at his own free will and pleasure; and that if, in the exercise of such right, he intercepts or drains off the water collected from underground springs in his neighbor’s well, this inconvenience' to his neighbor falls within the description of damnum, absqueinjuria, which cannot become the ground of an action. We-recognize this as sound doctrine in the ordinary ease of a question between adjoining owners of land. But in a case like the' present, where his injury complained of is inflicted by the construction of a public work under authority of a statute, over land, upon which the public authority has acquired a right of way *518 only, and where the statute itself provides a remedy for such injury, the law has been held to be otherwise in cases whose reasoning demands our assent.” The court then refers at length to a number of decisions by the supreme court of Massachusetts.
In Massachusetts it has been held that the common law does not apply where damage to an adjacent property owner was caused by the drainage of underground waters by a railroad company in the course of constructing its road, within the limits of its own right of way. Parker v. Boston & M. R. Co. 3 Cush. 107, 50 Am. Dec. 709. But the common law has been superseded by statute in Massachusetts in respect of damages caused by the construction and maintenance of railroads. The statute provides that “every railroad corporation shall be held liable to pay all damages that shall be occasioned by laying out and making and maintaining their road, or by taking any land or materials.” A similar statute in Massachusetts also holds a municipal corporation liable for damages occasioned by the making or maintaining of a street in a condemned right of way. It provides that in estimating damage “regard ■shall be had to all the damages done to the party, whether by taking his property or injuring it in any manner.” Marsden v. Cambridge, 114 Mass. 490. Under these statutory provisions damages can be recovered for injuring land whether it abut upon the right of way or not.
There is no statute in this District abrogating the common-law rule. Hence, if the damage to plaintiff’s property was occasioned by the withdrawal of the percolating subsurface waters from underneath her premises, there can be no recovery, and ■defendant company was entitled to have the jury so instructed. The judgment is reversed, with costs, and the cause is remanded for a new trial. Reversed.