**R. E. McGOWAN, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. 838.**

United States District Court
D. Montana,
Helena Division.

June 18, 1962.

Ralph J. Anderson and Stanley P. Sorenson, Helena, Mont., for plaintiff.

Moody Brickett, U. S. Atty., Butte, Mont., for defendant.

MURRAY, Chief Judge.

Plaintiff brought this case under the provisions of the Tucker Act, 28 U.S.C. § 1346(a) (2), and the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., alleging that by the construction of an irrigation and drainage project in the Helena Valley in Montana through its Bureau of Reclamation, the defendant had drained some springs and in effect had deprived plaintiff of an appropriated water right of 80 miners inches of water which flowed from said springs. Trial of the case was had before the court, sitting without a jury, briefs were submitted by the parties, and the case was taken under advisement. Plaintiff, in his reply brief, conceded that in view of the evidence presented at the trial, the tort claim aspect of the case is no longer present, and all that remains is the Tucker Act claim under the Fifth Amendment for compensation for the alleged taking of private property for a public use. This court has jurisdiction of such claim under 28 U.S.C. § 1346(a) (2).

Plaintiff is the owner of 80 acres of farm land in the Northeast Quarter of Section 4, Township 10 North, Range 3 West, M.P.M., located in the Helena Valley, which he acquired in 1923. Plaintiff's predecessor in interest, on May 20, 1920, filed a Notice of Appropriation of 80 miners inches of "the waters of certain springs flowing into Ten Mile Creek", and this water right ap-

propriation was conveyed to plaintiff along with his land in 1923. It has not been disputed and the evidence shows that the water so appropriated has at all times been put to a beneficial use by plaintiff and his predecessor, and the court finds that for the purpose of this case it is a valid water right, and that plaintiff is the owner thereof.

The evidence shows that the springs in question arise in the channel of a stream known as Ten Mile Creek in the Northwest Quarter of Section 4, Township 10 North, Range 3 West, M.P.M. on land not owned by the plaintiff, but referred to in the trial as the Ellis land. The water from the springs flows in a northeasterly direction in the channel of Ten Mile Creek from the Ellis land and across land referred to in the trial as the Robinson land, from where plaintiff's appropriation was diverted to his land by pumping. The springs are about a quarter of a mile away from the land of the plaintiff, and neither the point where he pumps the water to his land from the channel of Ten Mile Creek, nor the channel of the creek itself is on his land.

Ten Mile Creek originates a considerable distance south and west of the springs in question and flows in a northeasterly direction until it eventually empties into Lake Helena. Water flowed in Ten Mile Creek each year until around the first part of July. About the first of July each year Ten Mile Creek would usually go dry upstream from the springs (for how far a distance is not shown by the evidence), but from the springs on downstream to Lake Helena water from the springs had always flowed in Ten Mile Creek the year around, at least since 1923, when plaintiff acquired his land and water right, up until July 1959, when the springs went dry.

In the spring of 1959, the defendant, through its Bureau of Reclamation, commenced construction of an irrigation project in the Helena Valley. Included in the irrigation project were irrigation canals and laterals, and also a system of drain ditches. The drain ditch with which this suit is concerned is designated as Drain D–2–11. Drain D–2–11 commences in the Ellis property at the common corner of Sections 4 and 5 of Township 10 North and 32 and 33 of Township 11 North, which point is some 1650 feet north and west of the springs in question. From the point where it starts, Drain D–2–11 runs due north for a quarter of a mile along the section line between Sections 32 and 33, Township 11 North, thence due east for a half mile and thence due north again to the center of Section 33. From there it continues on in a general northeasterly direction until it empties into Lake Helena. Throughout its entire course Drain D–2–11 lies north of Ten Mile Creek, and generally parallels the channel of the stream. The drain ditch at no place enters plaintiff's property, and at no place is it nearer than a quarter of a mile to the springs or the point from where plaintiff pumped his water on the Robinson land. Drain D–2–11 is approximately 12 to 15 feet deep, whereas the channel of Ten Mile Creek is about 6 feet deep.

It is the plaintiff's position that the construction of Drain D–2–11 resulted in the drying up of the springs in Ten Mile Creek, thereby depriving him of his water right. The defendant's position is that the drain ditch is not responsible for the springs becoming dry, and that in any event, the drying up of the springs does not constitute a taking of plaintiff's property for which he may recover here.

The evidence is in sharp conflict as to the cause of the springs going dry. According to the testimony of the defendant's drainage expert, Drain D–2–11 is so located with relation to the direction in which the underground water in the area moves and the springs in Ten Mile Creek, and is so far away from the springs and the channel of the creek that in his opinion it is impossible for the drain to have had any effect on the drying up of the springs. The expert attributed the drying up of the springs to less than normal precipitation in the area over a period of several years prior to 1959 when the springs went dry, and a

consequent lowering of the ground water level.

On the other hand, the evidence discloses that in previous periods of less than normal precipitation, the springs had always flowed and plaintiff was always able to pump his full water right. Thus, during the period of 1932 through 1935, when the average annual precipitation was only 9.34 inches, the springs continued to flow, whereas the average annual precipitation in the period 1957 through 1960 was 11.11 inches, but the springs went dry in July, 1959, and continued dry up to the time of the trial. The only difference in conditions affecting underground water in the area shown by the evidence between the abnormal precipitation period of 1932–1935 and the abnormal precipitation period of 1957–1960 is the construction of the drain, and the court must, therefore, conclude that the construction of the drain was the cause of drying up the springs in Ten Mile Creek.

This leaves the question of whether the drying up of plaintiff's spring by the construction of the drain constitutes a taking of plaintiff's property for which compensation must be paid. Under the law generally, and under Montana law particularly, a perfected water right is a valuable property right which ordinarily cannot be taken without payment of compensation. 18 Am.Jur., p. 801; 56 Am.Jur., p. 742; International Paper Co. v. U. S., 282 U.S. 399, 51 S.Ct. 176, 75 L.Ed. 410; Osness Livestock Co. v. Warren, 103 Mont. 284, 62 P.2d 206. However, under the circumstances of this case, the court is of the opinion that the damage caused to plaintiff by the taking of his water right by the drying up of the springs is damnum absque injuria.

The evidence here is that the springs in question were fed by underground waters. It is well settled that all underground waters are presumed to be percolating waters, and in order to take them out of the rule governing such waters, it must be shown that they flow underground in a permanent, defined and known channel. 56 Am.Jur., p. 586; 93 C.J.S. Waters § 87 p. 762; United States v. 31.07 Acres of Land, etc., 189 F.Supp. 845 (D.C.Mont.1960). No attempt was made here to show, and the evidence would not support a finding, that the underground waters which fed the springs were part of an underground stream, as distinguished from percolating waters. Likewise, no contention was made, and the evidence would not admit of a finding, that the springs, because they arose as they did in the channel of Ten Mile Creek, were merely a continuation of the creek which had gone underground and flowed in a subterranean channel, as streams are sometimes known to do. On the contrary, the isobath maps introduced into evidence show that the underground water in the area is percolating water in its truest sense.

This distinction between underground percolating water and underground water flowing in a defined subterranean channel is important because as the Montana Supreme Court pointed out in the leading case of Ryan v. Quinlan, 45 Mont. 521, 533, 124 P. 512, 516, "subsurface water flowing in defined channels reasonably ascertainable is subject to the same rules as water flowing in surface streams". Much of the language from cases quoted by plaintiff in his briefs in support of his position has to do with the interception of underground water flowing in an underground channel, and has no application here, because the evidence fails to establish an underground channel. The fact that percolating water has a movement in some definite direction, as the evidence showed is the case here, does not change its character as percolating water. Gould v. Eaton, 111 Cal. 639, 44 P. 319.

In Ryan v. Quinlan, supra, the Montana Supreme Court considered the law with reference to percolating waters. The court stated that it was well settled by a long line of decisions that the same rules did not apply to percolating waters as applied to running streams. The court went on to discuss the difference between water percolating underground

and water running in defined channels either on the surface or underground, and announced the rule with regard to percolating waters as follows, at page 533 of the Montana Reporter, and page 516 of the Pacific Reporter:

"The result of it is that the proprietor of the soil, where such (percolating) water is found, has the right to control and use it as he pleases for the purpose of improving his own land, though his use or control may incidentally injure an adjoining proprietor. The general rule thus stated is subject, however, to the same limitation as the use of land itself, viz., that embodied in the maxim, 'sic utere tuo ut alienum non laedas,' or, as is said in some of the cases, the use must be without malice or negligence. This seems to be in accord with the current of decisions in the United States."

 Under this rule, Ellis and Robinson, and the other owners of the land over which the drain was constructed could have improved their land by draining it without liability to the plaintiff even if, in the process, they dried up plaintiff's spring, provided there was no malice or negligence on their part. The court has judicial knowledge that the government constructed the drains under easements from the owners for that purpose, so it stands in no worse position than the owners. There was evidence that the drains were necessary, in connection with the irrigation project, to improve the lands, and there was no evidence of malice or negligence.

There is a great deal of authority in support of the view that in the circumstances shown by this case the plaintiff cannot recover. United States v. Alexander, 148 U.S. 186, 13 S.Ct. 529, 37 L.Ed. 415; Gallerani v. U. S., D.C., 41 F.Supp. 293; Wheelock v. Jacobs, 70 Vt. 162, 40 A. 41, 43 L.R.A. 105, 67 Am.St. Rep. 659, and cases cited in anno. at page 663 of 67 Am.St.Reports; Clinchfield Coal Corp. v. Compton, 148 Va. 437, 139 S.E. 308, 55 A.L.R. 1376, and anno. at p. 1416; Gould v. Eaton, supra; Wilkining v. State, 54 Wash.2d 692, 344 P.2d 204; Evans v. City of Seattle, 182 Wash. 450, 47 P.2d 984; N. M. Long & Co. v. Cannon-Papanikolas Constr. Co., 9 Utah 2d 307, 343 P.2d 1100.

In United States v. Alexander, supra, it was held that where, in the construction of a tunnel, authorized by a federal statute, to increase the water supply of Washington, D. C., a well upon land adjacent to that upon which the construction was done was caused to become dry, there was no taking of property for public use within the intent of the Constitution. However, in that case recovery for the loss of the well was permitted because the statute authorizing the construction of the tunnel specifically provided for the payment of such claims. No comparable statute has been pointed to here.

The situation here is to be distinguished from that in U. S. v. 31.07 acres of land, supra, where, in a condemnation case involving this same Helena Valley Irrigation Project, this court permitted the landowners to recover for the depreciation in value of their lands caused by draining of the underground water used for subirrigation. In that case the recovery of that element was permitted on the basis that there was a direct physical invasion of the land by the construction thereon of the drain ditch, and it is implicit in that decision that absent the direct physical invasion of the land there could be no recovery for the draining of the underground water. Here the drain ditch is at least a quarter of a mile away from plaintiff's land, the springs or the point of diversion of the water.

Plaintiff cites the Montana cases of Popham v. Holloran, 84 Mont. 442, 275 P. 1099; Wills v. Morris et al., 100 Mont. 514, 50 P.2d 862, and Rock Creek Ditch & Flume Co. v. Miller, 93 Mont. 248, 17 P.2d 1074, which held in effect that underground percolating waters which have finally collected and reach a natural channel have lost their character as percolating water and are subject to appro-

priation from the stream or channel in which they have collected, and that such appropriation cannot be interfered with. He contends that the water he appropriates from the spring is such water, and, therefore, he must be paid compensation for the taking of it. As this court reads the cited cases, they stand for the proposition that such waters cannot be interfered with *after* they lose their character as percolating waters, not *before*. To hold otherwise those cases would have to overrule Ryan v. Quinlan, supra, which they do not purport to do. In fact, they cite Ryan v. Quinlan with approval.

In the Popham and Wills cases the water which had finally collected in a channel, and which was held to be subject to appropriation, came from irrigation water which was applied by owners of higher ground, and which after being applied to the surface seeped into the ground and percolated underground until it reached a channel. In those cases, if plaintiff's theory here that such water can never be interfered with were followed to its logical conclusion, the higher landowners who applied the irrigation water would be forever compelled to continue irrigating their land, regardless of their desires or the changed uses to which they might wish to put their land, because if they discontinued applying irrigation water, the channel into which such irrigation water eventually percolated would dry up, thereby depriving the appropriator from the channel of his water right. Such a result is absurd and cannot be the law.

For the foregoing reasons, the court holds that the loss of plaintiff's springs is damnum absque injuria, and judgment will be entered accordingly. This opinion is to be considered as the findings of fact and conclusions of law in this case.

Counsel for defendant is directed to proceed pursuant to Rule 11(b) of the Rules of this Court to prepare a form of judgment in accordance with this opinion and submit it to counsel for plaintiff for approval as to form only.