HILGER, RESPONDENT, *v.* SIEBEN ET AL., APPELLANTS.

(No. 2,563.)

(Submitted November 28, 1908.  Decided January 4, 1909.)

[98 Pac. 881.]

*Waters and Water Rights—Evidence—Insufficiency.*

1.  Evidence adduced by plaintiff in a suit to determine water rights, *held* insufficient to warrant a decree that plaintiff and her predecessor had appropriated a certain number of inches of water at a spring, where it did not appear when the water so appropriated was first used by such predecessor, when he dug a ditch by which it was sought to divert the water, when the water was applied for certain power purposes, or whether he did anything toward making an appropriation, other than the filing of a notice of appropriation.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by Susanna Hilger against Chris Zabel and others. From the judgment, defendants Henry Sieben and others appeal.  Reversed and remanded.

*Messrs. Gunn & Rasch,* for Appellants.

*Messrs. Walsh & Nolan,* for Respondent.

The existence of a subterranean channel is sometimes determined by shrubbery on the surface (*Hall* v. *McLea,* 53 Cal. 581),

and sometimes by springs ceasing to flow. (*Kenney* v. *Carillo,* 2 N. M. 480; see, also, Wiel on Water Rights, secs. 325a, 353, 354.)

In a controversy between the appropriator of percolating waters for use on distant lands, and the owners of the lands overlying the water-bearing strata, those who have used the water on their lands before the time of appropriation have rights paramount to the rights of such appropriator. (*Katz* v. *Walkinshaw,* 141 Cal. 116, 99 Am. St. Rep. 35, 70 Pac. 663, 74 Pac. 766, 64 L. R. A. 236; see, also, *McClintock* v. *Hudson,* 141 Cal. 275, 74 Pac. 849; *Cohen* v. *La Canada Land & Water Co.,* 142 Cal. 437, 76 Pac. 47; *Montecito Co.* v. *Santa Barbara,* 144 Cal. 578, 77 Pac. 1113; *Newport* v. *Temescal Water Co.,* 149 Cal. 531, 87 Pac. 372, 6 L. R. A., n. s., 1098.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was commenced by the plaintiff against the defendants to have determined the relative rights of the parties to the use of the waters of Towhead creek, in Lewis and Clark county. The plaintiff is the owner of certain real estate known as the "Hilger ranch." She claims the right to the use of all the waters of the stream. In her complaint she asserts the right to this use by virtue of the appropriation of some of the waters which flow out of the canyon in which the stream rises, disappear in the gravel, and by means of a well-defined subterranean channel are conducted onto her land, where they reappear in the form of a spring; and she asserts her right to the remaining portion of the water by reason of the fact that such water percolates through the loose gravel and sand into and under the soil of her premises, thereby affecting subirrigation. The defendants deny the plaintiff's claim, and assert their rights to the use of certain quantities of the water by appropriation. The case was tried to the court without a jury. The court made findings of fact and conclusions of law, and entered a decree by which awards were made to the parties as follows: To the

plaintiff the right to the use of 100 inches of water appropriated May 1, 1873; to the defendants Sieben and Grimes the right to the use of 200 inches appropriated January 1, 1882; to the defendants Zabel and Kupfer the right to the use of 200 inches appropriated October 5, 1901. The court specifically found against the plaintiff upon her claim to the use of any of the waters by virtue of subirrigation of her land. The defendants Sieben and Grimes have appealed from the judgment, and from an order denying them a new trial.

Two questions only are presented for our determination: (1) Is the evidence sufficient to justify the finding of the trial court that the waters of Towhead creek, to the extent of 100 inches, after disappearing in the sand and gravel some distance above plaintiff's ranch, follow a well-defined subterranean channel to the ranch and reappear as a spring; and (2) is the evidence sufficient to justify the finding that on May 1, 1873, the plaintiff and her predecessors in interest appropriated the 100 inches of water thus appearing at the spring? We may dismiss the first of these questions with the observation that in our opinion the evidence is amply sufficient to warrant the finding of the trial court. The second question presented requires further consideration.

Nicholas Hilger, the husband of plaintiff, was the principal witness in her behalf. Her sons, Joseph D. and Andy Hilger, and one Ewing, also gave testimony in support of her contention. It appears that John H. Ming owned the Hilger ranch for three or four years prior to 1873, when he sold it to Nicholas Hilger, who owned it continuously until 1904, when by mesne conveyances it came into the possession of the plaintiff. Nicholas Hilger lived on the premises practically all of the time he owned them. He appears to have been thoroughly acquainted with the conditions there, and, in view of these facts, his testimony appears all the more remarkable. Aside from the effects upon the land of the percolating waters, his testimony touching the use of the waters of Towhead creek on the Hilger ranch is summarized as follows: He purchased the property in 1873,

and at that time Ming had a ditch tapping Towhead creek some distance above the ranch and conducting the water onto a portion of the land above the buildings and the spring; that *several years ago* he (Nicholas Hilger) dug a ditch capable of carrying 150 to 200 inches of water, tapping Towhead creek about three-fourths of a mile above the ranch, and conducted some of the water onto the ranch to irrigate some trees and higher ground not otherwise irrigated; that this ditch was used for *several* seasons; that they had use for the water of the spring and had ditches to conduct it onto a portion of the bottom land not naturally irrigated; that during the wet seasons the surplus water from the spring was used for power purposes to operate a pump or water-wheel to lift water from a near-by well to irrigate some ground above not otherwise irrigated. The witness then further testified: ''Q. Well, now, why was it that you didn't use that upper ditch on your ranch? A. I needed the water on the ranch; by running it from there and around, I would deprive myself of water on the ranch, where I needed it on the ground. * * * Q. What was the largest quantity of water that you knew of as being developed or produced by the springs? A. Oh, we made use of it. We made use of it, almost all of it all the time. Q. What would be the greatest quantity, how many inches? A. We usually had a flow of about 200 inches. There was a box there through which it run. * * * '' This witness further stated that on December 24, 1881, he filed for record a notice of appropriation of 200 inches of the water of Towhead creek. It is to be observed from this that the witness wholly fails to state when the water was first used by him, when he dug the ditch three-fourths of a mile above his place, whether he ever used the Ming ditch, when it was he constructed the ditch or ditches leading from the spring, when it was he installed the pumping apparatus, or whether in 1881 he did anything toward making an appropriation other than to file the notice of appropriation.

The witness Ewing testified that he worked on the Hilger ranch for Ming in 1872 and 1873; and with respect to the Ming

ditch he said: "I know of his constructing a ditch from Tow-head gulch onto the bench during the time. He had plowed some ground up, and was farming on the bench, is the reason he dug that ditch. The reason he discontinued using that ditch was because it affected his spring at the mouth of Beverhead, the spring there by Hilger's. * * * The water was only used for one season, and the reason it was only used for one season I have already given you."

Joseph D. Hilger testified: "I don't remember exactly when the water from the spring was first used for irrigation. That goes farther back than I can remember. I think it was about '82. I think the short ditch for the purpose of taking the water from the spring for irrigating was constructed in '82. * * * That ditch was about 500 or 600 feet in length, I guess. I never measured it. I helped to construct part of the ditch. That ditch conducted the water onto a piece of land below the spring, on a garden spot. * * * Until the construction of this ditch, there was no use made of the water of the spring for irrigating down there. There may have been before. * * * There were no signs of any ditches there that had been used for conveying water from the spring when this ditch was constructed—none that I knew of or saw. * * * There are some small ditches down there traversing this Hilger ranch. I don't remember when these were dug, but I think it was about '86. One of them was dug for a drain. * * * I remember the water of the spring being used to operate a water-wheel. That water-wheel was constructed about '83 or '84. I am not positive—'82 maybe. I am not sure about that. * * * The water-wheel was operated by water from the spring several years—four, five, or six years. The water from the well that was pumped by the water-wheel was used for running around the piece of ground where the trees were planted. It was to irrigate the trees. * * * I don't remember when this well that I spoke about was filled up. It was some time after we quit using the water-wheel for power. We used the wheel in '84, '85, '86, and '87; so it must have been about '90."

Andy Hilger testified: "I saw the old ditch there, but I know in recent years of water being used; that is, we tried to use it, but it was too near dried up to do anything with it.  *  *  * That water from the spring has been used for irrigating within the last 10 years. To my personal knowledge I know that we have used it the last three years since I have been on the ranch. We used as much of it as we could last year and the year before. We had a ditch leading from the spring, or from the channel through which the water from the spring flows.  *  *  * The lower garden we irrigated from the spring. We have two gardens there. I irrigated the upper garden from water that I pumped out of the well on a few little tomato plants that were drying up on the ground that we always raised crops on without irrigation. I remember of the water from the spring being used to run a water-wheel. If I am not mistaken, that water-wheel was put in there in 1883. It may have been the year before; but I think it was in '83.  *  *  *  The well is not there now from which the water was taken. I couldn't say when the well was filled up. I know it was open in '83."

In awarding to the plaintiff the prior right to the use of 100 inches of the water the court specifically based its decree upon finding No. 10, as follows: "That ever since 1873 the plaintiff and her predecessors in interest have used the water of said spring to the amount of one hundred (100) inches for power purposes, and also through ditches constructed from said spring, and said water to the amount of one hundred (100) inches has been used to irrigate a portion of the lands now owned by plaintiff, and through the use of said water, in the manner aforesaid and to the extent of one hundred (100) inches, the plaintiff and her predecessors in interest appropriated of the waters of said Towhead creek the quantity named, and, as against the defendants, is entitled to the beneficial use of one hundred (100) inches of said water." Apparently, the court was unable to find that the waters from the spring had ever been used for domestic or other useful purposes, except for power and irrigation purposes, and we have simply searched the record in vain

for evidence to sustain the finding that the water was applied to those purposes in 1873. In fact, the evidence upon this question now under consideration is so barren of probative facts that we are unable to make a proper finding or suggest a modification of the decree which would secure to the parties their rights, and for this reason the judgment and order are reversed and the cause is remanded to the district court, with directions to grant a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SMITH, being disqualified, takes no part in the foregoing decision.